he was traveling, turned again without looking back or giving any heed to the approaching car, although he knew it was coming. If so, he was not entitled to recover, and that was the gist of the request. The order should be reversed, and the motion for new trial granted, with costs to appellant to abide event.

Order reversed, and motion for new trial granted, with costs to appellant to abide event.

McLENNAN, P. J., concurs. KRUSE and ROBSON, JJ., concur on last ground stated in opinion. WILLIAMS, J., dissents, and votes for affirmance.

---

(118 App. Div. 56)

## KEENAN v. METROPOLITAN ST. RY. CO.

(Supreme Court, Appellate Division, First Department. March 8, 1907.)

1. CARRIERS—INJURY TO PASSENGER—ACTIONS—EVIDENCE—WEIGHT AND SUFFICIENCY.

    In an action against a street car company for injuries received by being thrown from the car step, evidence examined, and *held* insufficient to sustain the finding that the servants of defendant were negligent.

    [Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Carriers, §§ 1309, 1310.]

2. DAMAGES—PLEADING—ISSUES—PROOF AND VARIANCE.

    Where a husband, in an action for injuries to his wife, alleged that her services, which he lost, consisted of keeping house for him, it was error to allow him to prove that she assisted him in his duties as janitor.

3. SAME—EVIDENCE—ADMISSIBILITY—LOSS OF EARNINGS OR SERVICES.

    In an action by a husband for loss of services of his wife, the loss of wages by his daughters, who remained at home to perform the duties of his wife, was not proper proof of the reasonable value of the services of the wife.

4. TRIAL—MISCONDUCT OF COUNSEL—INTERRUPTIONS.

    In an action by the husband for loss of services of his wife, due to injuries, the wife was asked on cross-examination concerning the complaint in an action she brought against the defendant for the same injuries, and the husband's attorney stated, after the objection of the defendant's counsel, that the action had been dismissed owing to an error in the complaint, such conduct was improper, and calculated to prejudice the defendant in its right to cross-examine the witness without her being assisted by her counsel in explaining a verified declaration inconsistent with her testimony.

5. SAME—MATTERS NOT SUSTAINED BY EVIDENCE.

    In an action against a street car company for personal injuries, it was error for the plaintiff's attorney to state, without any evidence to justify it, that defendants "had millions of capital," and "thousands of employés," and had failed to produce a passenger who saw the accident, and to dwell unduly on the fact that the conductor on the car did not give his right name on entering the employ of the company, referring to him as the man who committed a crime on entering that corporation.

    [Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trial, §§ 285–287.]

Appeal from Trial Term, New York County.

Action by Patrick Keenan against the Metropolitan Street Railway Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGH-
LIN, HOUGHTON, and LAMBERT, JJ.

John F. McIntyre, for appellant.
Robert L. Turk, for respondent.

LAUGHLIN, J.   The plaintiff has recovered a verdict for $1,000
damages, alleged to have been sustained in consequence of personal
injuries to his wife alleged to have been caused by defendant through
the negligence of its servants in starting a car, which had been stopped
at a point where passengers were customarily received and discharged
pursuant to her signal, "while she was in the act of alighting there-
from." It is not clear, from the manner in which the case was sub-
mitted to the jury, that the verdict was rendered on the theory of
negligence in starting the car while the passenger was alighting.
The jury should have been instructed that it was incumbent upon
plaintiff to show that the conductor knew, or, had he exercised rea-
sonable care, would have known, that the passenger desired to alight
at that point, and, if so, she should have been afforded a reasonable
opportunity to alight, and, if he did not, but signaled the car to start
while she was in the act of alighting, then they would be justified
in finding the company guilty of negligence. The jury may well
have thought that, even though the conductor did not know and should
not have known that she wished to alight, yet that, if the car was
started with a jerk, the company would be liable. If her conduct
was such as to justify the conductor in inferring that she did not in-
tend to alight there, he was not required to delay all other passen-
gers by holding his car until she saw fit to sit down. She should
either have remained seated, or held on securely, or have made
some move toward the running board, or given the conductor some
notice that she was getting off as fast as she reasonably could.

The evidence showed that the signal to stop was not given by
plaintiff's wife, but by her son; and it does not show that the con-
ductor either knew or should have known that they were traveling
together, or desired or intended to alight at the same point. It
was, according to plaintiff's evidence, an open car with a running
board at the side. Plaintiff's wife, her son and daughter boarded a
crosstown car at Eighty-Sixth street and Avenue A, and changed
to a north-bound car at Lexington avenue, and again changed to a
Lenox Avenue car at 105th or 106th street. They contemplated
alighting at Lenox avenue and 121st street west. It does not ap-
pear whether the fares were paid separately, or by one for all, or wheth-
er each held a transfer, or one held three; nor does it appear whether
many passengers boarded the Lenox Avenue car with them, so that
the conductor would have known that they were traveling together.
The accident happened about 11 o'clock at night. Plaintiff's wife, ac-
cording to her testimony, was seated on the fourth seat from the front
of the car, and her son sat to her right and her daughter to her left
on the same seat. The son alighted in safety before the car started;
but she, according to her own testimony, either remained seated until
after it started, or made no move preparatory to alighting until after

it stopped, and then merely arose in her place and remained standing firmly on both feet in the body of the car, with her left hand grasping the back of the seat in front, looking forward, without attempting to signal the conductor, who was at the rear end of the car, when it started with a jerk and threw her down and off the car. She said on her direct examination:

"My son got off first, and after my son got off the car started, and I raised up. The car started and threw me, and gave that jerk and threw me. I was standing facing the head or front of the car, just as I got up. I stood up and just put my hand like that (indicating) as the car threw me. That was my left hand, on the seat in front of me. At the time the car gave this sudden start I was standing on the body of the car, on the platform. I was not on this running board. I never made no motion to get down. With my hand on the seat in front of me this car threw me."

On cross-examination her testimony is practically the same; but she said that she did not remember whether her son remained seated until the car stopped; that after alighting he remained standing by the car to assist her off, and that the car moved forward again at least five feet, and she could not say how much farther, before she was thrown off. The son was in Kansas at the time of the trial, and his evidence was not taken. The daughter testified that she and her mother remained seated until after the car stopped, and that her brother arose, but did not step down onto the running board until after the car stopped. She said that both she and her brother made an unsuccessful attempt to signal the conductor, but could not get his eye, and later they endeavored to attract his attention again, and he gave the signal to stop; but she does not say that he was looking at her, and, in view of the fact that she made no move to arise until after the car stopped, it cannot be said that he saw any signal, except that given by her brother, as testified to by her mother. Assuming that there was sufficient evidence that the car was negligently started while she was in the act of alighting to take the case to the jury, which is doubtful, the weight of the evidence indicates that there was no negligence on the part of the conductor in signaling the car to start; for he was justified in believing that plaintiff's wife did not intend to alight at that point. She had not reached the running board, or moved toward it. The conductor was toward the rear, and she had given no indication to him that she contemplated alighting there, and in the circumstances I think her attitude was not sufficient notice. If he observed her, he may fairly have inferred that she was preparing to alight at the next street.

The plaintiff in his complaint specified that the services of his wife, which he lost owing to her injuries, and which he was obliged to employ others to perform, consisted of the "duties of housekeeper in their dwelling," which she performed for him and their family. Plaintiff and his wife and family resided at No. 168 West 121st street, borough of Manhattan, New York. He was permitted to show, over objection duly interposed that it was not within the issues, and exception, that his occupation was that of a janitor; that he was janitor of the house in which they resided, and of No. 170, the next house, as well; that she assisted him in his occupation as janitor of those houses,

and that he was obliged to require alternately two of his daughters, one of whom was over age, who were working out, earning and contributing to their father, one $5 per week and the other $3.50 per week and board, to remain home nearly two years and perform the services which she had theretofore performed in connection with the janitorship of those houses, which consisted of cleaning and lighting the halls and the household duties as well. Plaintiff was thus allowed to prove damages not pleaded, and also to give incompetent evidence as to damages properly pleaded. The loss of his daughters' earnings was neither recoverable nor proper proof of the reasonable value of the services of his wife.

On cross-examination of plaintiff's wife, it appeared that she also had sued the defendant. Counsel for defendant, manifestly with a view to interrogating her concerning a discrepancy between her testimony and her original complaint in that action, which was subsequently amended, asked for the original complaint; and plaintiff's attorney stated that her original action had been discontinued, owing to an error in the complaint for which he was responsible, and, after counsel for defendant pointedly objected, he persisted in repeating the statement. This was highly improper, and calculated to prejudice the defendant in its right to cross-examine the witness without her being assisted by her counsel in explaining a verified declaration inconsistent with her testimony.

In summing up, the attorney for plaintiff stated, without any evidence in the record to justify it, that the defendant "has millions of capital" and "thousands of employés," and had failed to produce a passenger who saw the accident, and dwelt unduly on the fact that the conductor did not give his right name on entering the employ of the company, and referred to him as "the man who committed a crime on entering that corporation." There are other exceptions which might require serious consideration; but since, for the conduct of plaintiff's attorney, which was prejudicial to defendant, for errors in the reception of evidence on the question of damages already pointed out, for allowing a recovery on a theory different from that pleaded, and because the verdict, if rendered on the proper theory, is against the weight of the evidence, a new trial must be ordered, it is not deemed necessary to pass upon them, as they may be avoided on the next trial.

It follows, therefore, that the judgment and order should be reversed, and a new trial granted, with costs to appellant to abide the event. All concur.